

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-2008

# NLRB v. Regency Grande

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5013

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"NLRB v. Regency Grande" (2008). *2008 Decisions*. Paper 1570.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1570

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 06-5013

————————

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

v.

REGENCY GRAND NURSING AND REHABILITATION CENTER,

Respondent

*SEIU 1199 New Jersey Health Care Union,

Intervenor

*(Pursuant to Clerk's Order dated 1/30/07)

————————

On Application for Enforcement of an Order
of the National Labor Relations Board
(Board Case No. 22-CA-26231)

_____

Submitted Under Third Circuit LAR 34.1(a)
Friday, January 3, 2008

————————

Before: FUENTES, JORDAN, <u>Circuit Judges</u>, and DUBOIS,[*] <u>District Judge</u>

(Opinion Filed: February 20, 2008)

_____

OPINION OF THE COURT

_____

DUBOIS, *District Judge*.

This case is before the court on application of the National Labor Relations Board ("NLRB" or "Board") to enforce an Order against Respondent Regency Grande Nursing and Rehabilitation Center ("Regency" or "Respondent") to cease and desist from engaging in unfair labor practices and to reimburse certain employees for fees and moneys deducted from their pay pursuant to those practices. For the reasons that follow, we will enforce the order.[1]

## I. Factual History

Respondent is a nursing home and rehabilitation center located in Dover, New Jersey, and owned and operated by David Gross. In April 2003, James Robinson, the president of Local 300S ("Local 300"), a union affiliated with the United Food and Commercial Workers Union, informed Gross by letter that Local 300 was attempting to

_____

[*] The Honorable Jan E. DuBois, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

[1] The Court exercises jurisdiction over this application pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e).

organize Respondent's employees.  Gross agreed to recognize Local 300 if an arbitrator determined that the union had obtained authorization cards from a majority of employees in Respondent's service and maintenance unit.  On May 21, 2003, an arbitrator conducted a "card-check" and determined that a majority of eligible employees had selected Local 300 as their collective bargaining representative.  By Award dated May 22, 2003, the arbitrator directed Respondent to recognize Local 300, and it did.  No public announcement or written statement of the recognition was issued.

More than seven months later, on January 8, 2004, Respondent entered into a collective bargaining agreement with Local 300.  The next day, Respondent announced in a meeting with employees that a card count had taken place and that it had entered into a collective bargaining agreement with Local 300.  On February 19, 2004, Intervenor SEIU Local 1199 ("SEIU") filed charges with the Board against Respondent, alleging that Respondent violated the National Labor Relations Act (the "Act") by recognizing Local 300 at a time when Local 300 did not have authorization cards from a majority of unit employees.  On September 30, 2004, SEIU amended its charge to further allege that Respondent entered into an agreement with a "minority union,"[2] also in violation of the Act.  The same day, General Counsel for the Board filed a complaint containing both of these allegations.  Respondent filed an answer denying any unfair labor practices.

_____

[2]     A "minority union" is a union that operates as the exclusive bargaining representative of a group of workers without the consent and agreement of a majority of those workers.  See International Ladies' Garment Workers' Union, AFL-CIO v. N. L. R. B.,366 U.S. 731, 737-38 (1961).

A hearing was held before an administrative law judge ("ALJ"). The ALJ concluded, *inter alia*, that Respondent violated Sections 8(a)(1), (2), and (3) of the Act by recognizing and entering into an agreement with a minority union. The ALJ relied primarily on the credited testimony of 81 employees, "not one of [whom] testified . . . that he or she signed a card for Local 300S, and . . . 74 [of whom] affirmatively stated that they did not sign a card authorizing [Local 300] to represent them" prior to that union's recognition.[3] (App. 13.) He also relied on circumstantial evidence, including the actions and behavior of both Gross and Robinson, and the circumstances surrounding the card check itself. Such evidence led the ALJ to conclude that "Respondent sought to conceal from the employees, and ultimately from SEIU, the fact that it had recognized Local 300S." (App. 12.) Respondent's defenses, including the defense that the allegations against Respondent were time-barred, were rejected.

Pursuant to the Board's rules and regulations, Respondent filed timely exceptions to the ALJ's decision. The Board issued a decision affirming but modifying the ALJ's rulings, findings, and conclusions, and adopting the ALJ's Order, also with modifications. The Board rejected Respondent's defense that the charges were untimely pursuant to Section 10(b) of the Act. Subsequent motions for reconsideration by Respondent were denied.

---

[3] The bargaining unit consisted of 117 employees. Thus, the testimony from 74 unit employees that they did not sign cards for Local 300 makes majority support for that union mathematically impossible.

4

## II.  Standard of Review

The Court "must defer to the requirements imposed by the Board if they are rational and consistent with the Act, and if the Board's explication is not inadequate, irrational or arbitrary." Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 364 (1998) (quotations and citations omitted).  When reviewing the Board's decision in a particular case, the Court must "accept the Board's factual determinations and reasonable inferences derived from [those] determinations if they are supported by substantial evidence." Stardyne, Inc. v. NLRB, 41 F.3d 141, 151 (3d Cir. 1994); see also 29 U.S.C. § 160(e), (f).

Where the Board adopts the ALJ's decision in part, the Court reviews both the ALJ and Board decisions.  Trafford Distribution Center v. N.L.R.B., 478 F.3d 172, 179 (3d Cir. 2007).  The Board's decision whether to defer to an arbitrator's award is reviewed for abuse of discretion only.  NLRB v. Yellow Freight, 930 F.2d 316, 322 (3d Cir. 1991).

## III.  Discussion

Respondent makes three arguments in its brief.  First, Respondent argues that the charges against it were time-barred by Section 10(b) of the Act.  Second, Respondent asserts that deferral to the arbitrator was required by NLRB and Third Circuit case law.  Finally, Respondent argues that the remedy imposed by the Board was punitive.  We address each of the arguments in turn.

5

Respondent's first argument is that the charges against it were time-barred when they were filed. Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge." The initial charge in this case was filed February 19, 2004, about 8 months after Respondent recognized Local 300. The amended charge was filed on September 30, 2004, about 9 months after Respondent entered into an agreement with Local 300. Although 10(b) would normally bar both claims, the ALJ and the Board found that the charges were timely pursuant to exceptions to Section 10(b). (App. 3, 13.)

Applying the doctrine of intentional concealment, the ALJ and the Board concluded that the initial charge was timely because it was filed within six months of January 9, 2004, the day SEIU and Respondent's employees were informed of Respondent's recognition of Local 300. (App. 3, 13-14.) The ALJ and Board also found the amended charge to be timely under Redd-I, Inc., 290 NLRB 1155 (1988), which held that otherwise untimely allegations are not barred by Section 10(b) if they are "closely related" to the initial, timely charge. The ALJ and the Board concluded that the amended charge was "closely related" to the initial charge and was therefore timely.

The crux of Respondent's timeliness argument is that the doctrine of intentional concealment does not apply to the facts of this case. The Board has held that fraudulent concealment tolls the 10(b) statute of limitations when "(1) deliberate concealment has

6

occurred; (2) material facts were the object of the concealment; and (3) the injured party was ignorant of those facts, without any fault or want of due diligence on its part." See Brown & Sharp Mfg., 321 NLRB 924 (1996). Similarly, "the Board has consistently held that the 10(b) period does not commence until the charging party has clear and unequivocal notice of the violation." Valley Floor Coverings, 335 NLRB 20 (2001) (quotations and citations omitted); see also N.L.R.B. v. Public Service Elec. and Gas Co., 157 F.3d 222, 228-29 (3d Cir. 1998). Respondent asserts that it never deliberately concealed recognition of Local 300 from its employees or SEIU and that if the employees and SEIU were unaware of the recognition, their ignorance was due to want of due diligence on their part.

The ALJ assiduously laid out the evidence, both direct and circumstantial, supporting a finding of fraudulent concealment. The evidence includes (1) Gross' request to Robinson that they "keep everything at a low, quiet, even-keel pace;" (2) Gross' inability to name a single employee with whom he claimed to have spoken about the union's recognition, or to recall when any conversations took place; (3) the fact that employees who were allegedly informed of the recognition were not told which union was recognized; (4) the fact that not a single employee who testified stated that he or she had knowledge of Local 300's recognition; (5) the seven-month delay in making any public announcement about Local 300's recognition; and (6) the fact that prior to January 9, 2004, the union never held a meeting with any of the Regency Grande employees for

7

any purpose. Because substantial evidence on the record as a whole supports the Board's conclusion that Respondent engaged in fraudulent concealment, the Board's determination that the charges were timely must be upheld.[4]

Respondent's second argument is that the Board erred by not deferring to the arbitrator. Respondent maintains that deferral to the arbitrator is required unless proceedings before the arbitrator were unfair and irregular. As stated above, this Court reviews the Board's decision whether to defer to an arbitrator for abuse of discretion only.

The Board has held that it is "not bound by a neutral party's authorization card count where it was shown that particular cards which were counted toward a union's majority status were, in fact, invalid." Sprain Brook Manor, 219 NLRB 809 (1975) enforced sub nom. NLRB v. Book, 532 F.2d 877 (2d Cir. 1976). Where a majority of unit employees testify that they did not sign union authorization cards, as in this case, the Board is not required to defer to the arbitrator's award. Id; see also Windsor Castle Health Care Facilities, 310 NLRB 579 (1993); cf. Yellow Freight, 930 F.2d at 322 ("[I]t makes little sense to defer to the arbitrator's specific factual findings where deference overall was refused because of the inadequacy of the factual presentation to the arbitrator.") (citation and quotation omitted).

_____

[4] Because we find that recognition was concealed from Respondent's employees, we need not address Respondent's argument that enforcing this Order will allow rival unions to file belated charges against employers on the grounds that *they* were not notified of another union's recognition.

The record reflects that a majority of employees - 74 out of a unit of 117 - testified that they did not sign authorization cards for Local 300 prior to that union's recognition. Thus, in declining to follow the arbitrator's decision, the ALJ and the Board did not abuse their discretion.

Finally, Respondent argues that requiring it, but not Local 300, to refund dues is a penalty and not proper make-whole relief. Respondent cites no case law in support of this argument. In an October 31, 2006 Order, the Board rejected Respondent's argument on the ground that it was not previously raised on exception to the Board. On November 29, 2006, upon Respondent's request to reconsider, the Board again rejected the argument. The November 29, 2006 Order stated that the request to reconsider "fail[ed] to raise any matter that was not previously considered" and was "lacking in merit." (App. 1505.)

The Board's rules provide that "[n]o matter not included in exceptions . . . may thereafter be urged before the Board, or in any further proceeding." 29 C.F.R. § 102.46(g). The rules further provide that exceptions "shall set forth specifically the question of procedure, fact, law, or policy to which exceptions are taken" and that "[a]ny exception to a ruling, finding, conclusion or recommendation which is not specifically urged shall be deemed to have been waived." 29 C.F.R. § 102.46(b). Although the Board argues that the Court is precluded by 29 C.F.R. § 102.46(g) from considering Respondent's objection to the Board's remedy, we note that Respondent included in its exceptions to the ALJ's opinion an exception to "[t]he sections entitled 'Conclusions of

9

Law' 'Remedy and 'Order.'" (SA 15.)  We further note that in an Order dated April 19, 2006, the Board declined to reject Respondent's exceptions on the ground that they did not conform to 29 C.F.R. § 102.46(b)(1) and (c)(2), the rules requiring specificity, although that Order did not specifically address the sufficiency of the exception to the remedy.  On the basis of the record, we conclude that Respondent's exception to the Board's remedy is minimally sufficient to warrant our consideration of the remedy.

"[T]he Board's power to fashion remedies for unfair labor practices is a 'broad and discretionary one, subject to limited review.'" St. George Warehouse, Inc. v. NLRB, 420 F.3d 294, 299 (3d Cir. 2005) (quoting Fibreboard Paper Prods. Corp. v. NLRB, 379 U.S. 203, 216 (1964)).  Our review of the Board's choice of remedy is limited to asking whether the remedy goes beyond the Board's scope of authority.  See Sure-Tan, Inc. V. NLRB, 467 U.S. 883, 899 (1984).  The Board's remedy in this case restores the status quo ante.  We do not find that this remedy exceeded the Board's broad discretion.

Upon review of the record, we find that substantial evidence in this case, including the testimony of a majority of bargaining unit employees who affirmatively testified that they did not sign authorization cards for Local 300, supports the Board's finding that Respondent violated Sections 8(a)(1), (2), and (3) of the Act.  We will enforce the Board's Order.