**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3548
_____

NATIONAL LABOR RELATIONS BOARD,

Petitioner

v.

REGENCY GRANDE NURSING AND
REHABILITATION CENTER,

Respondent

_____

On Appeal from the National Labor Relations Board
(NLRB-1 : 22-CA-28331
NLRB-1 : 22-CA-28384
NLRB-1 : 22-RC-12889
NLRB-1 : 22-RC-12895)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 21, 2011

BEFORE: BARRY, AMBRO and COWEN , Circuit Judges

(Filed: August 9, 2011 )
_____

OPINION
_____

COWEN, Circuit Judge.

This case is before the Court on an application of the National Labor Relations Board (the "Board") to enforce an order entered on August 23, 2010 against Regency Grande Nursing and Rehabilitation Center ("Regency Grande"). For the reasons that follow, we will enforce the order.

I.

In 2005, the Board found that Regency Grande had engaged in unfair labor practices at its Dover, New Jersey facility during organizing efforts by Local 300S, a union affiliated with the United Food and Commercial Workers Union, and Local 1199 of the Service Employees International Union ("SEIU"). Specifically, the Board found that Regency Grande had violated Sections 8(a)(1), (2), and (3) of the National Labor Relations Act (the "Act") by recognizing Local 300S as the exclusive collective-bargaining representative of employees and entering into a collective-bargaining agreement with Local 300S at a time when that union did not represent a majority of those employees. Regency Grande Nursing & Rehab. Ctr., 347 NLRB 1143 (2006). Upon review, this Court found that substantial evidence supported the Board's findings and enforced the Board's order. N.L.R.B. v. Regency Grand Nursing & Rehab. Ctr., 265 F. App'x 74 (3d Cir. 2008) (not precedential) ("Regency Grande I").

Soon thereafter, the Board filed additional unfair labor practices charges against Regency Grande concerning its actions at the Dover facility. Specifically, the complaint

2

alleged that Regency Grande had violated Sections 8(a)(1) and (3) of the Act by: (a) interrogating housekeeping employee Manuela Figueroa on March 4, 2008 about why she met with a union organizer in the home of another employee, causing her to reasonably believe that her activities were under surveillance; (b) interrogating housekeeping employee Valeria Madeina on April 10, 2008 as to how she voted in a representation election; and (c) discharging employee Aida Basualto on April 10, 2008 because she supported Local 1199.

Following a hearing, an administrative law judge ("ALJ") found that Regency Grande had violated the Act as charged. Regency Grande sought administrative review. While its appeal was pending before the Board, the company filed a motion requesting that Board Member Becker recuse himself from the case because he had previously worked with the SEIU. Upon review, the Board affirmed the ALJ's rulings and adopted the recommended order with minor modifications. The Board issued a broad cease-and-desist order enjoining the company from future violations of the Act, and ordered Regency Grande to offer Basualto full reinstatement of her former position to the extent that it had not already done so. The Board denied Regency Grande's motion to recuse Member Becker. We now review the Board's order.[1]

---

[1] On September 3, 2009, a two-member panel of Board issued a Decision, Order, and Certification of Representative adopting and affirming the ALJ's decision with modifications. Thereafter, Regency Grande filed a petition for review in the United States Court of Appeals for the District of Columbia Circuit. On June 17, 2010, the United States Supreme Court issued its decision in New Process Steel, L.P. v. N.L.R.B., 130 S. Ct. 2635 (2010), holding that, under Section 3(b) of the Act, a delegee group of at least three members must be maintained. Thereafter, the Board issued an order setting aside the September 3, 2009 decision and order. The Board subsequently delegated its

3

## II.

We exercise jurisdiction over this appeal from the Board's decision pursuant to Section 10(e) of the NLRA. 29 U.S.C. § 160(e). Where the Board has adopted the ALJ's decision in part, we review both the decisions of the ALJ and the Board. See id. We review these decisions to determine whether there is substantial evidence in the record as a whole supporting the agency's findings. Stardyne, Inc. v. N.L.R.B., 41 F.3d 141, 151 (3d Cir. 1994). "Substantial evidence" has been defined as simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hedstrom Co. v. N.L.R.B., 629 F.2d 305, 313 (3d Cir. 1980) (internal quotation marks and citation omitted). "A court should defer to the Board's determination under this restrictive standard of review, even when the court itself would be inclined to adopt a different interpretation of the evidence." Id. at 313-314.

## III.

### A.     The Section 8(a)(1) Violation

Regency Grande first challenges agency's determination that the company violated Section 8(a)(1) of the Act by interrogating employees about their union activity and creating the impression of surveillance.

Section 7 of the Act grants employees the "right to self-organization, to form, join, or assist labor organizations . . . and to engage in . . . concerted activities for the purpose

---

authority in this proceeding to a three-member panel, which issued a Decision, Order, and Certification of Representative on August 23, 2010 incorporating by reference the two-member panel's decision and adopting and affirming the ALJ's decision to the extent and for the reasons stated in that decision.

of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. § 157. Section 8(a)(1) of the Act implements that right by making it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise" of their Section 7 rights. 29 U.S.C. § 158(a)(1). To establish a violation of this provision, "it need only be shown that under the circumstances existing, the employer's conduct may reasonably tend to coerce or intimidate employees in the exercise of rights protected under the Act." Hedstrom, 629 F.2d at 314 (internal quotation marks and citation omitted). Conduct that gives the impression of surveillance violates Section 8(a)(1) if it tends to interfere with, restrain, or coerce employees in the exercise of their Section 7 rights. Hanlon & Wilson Co. v. N.L.R.B., 738 F.2d 606, 613 (3d Cir. 1984).

In this case, substantial evidence supports the Board's determination that Regency Grande violated Section 8(a)(1) of the Act by its actions on March 4, 2008. At the hearing, testimony revealed that, on or about March 3, 2008, Basualto and four other housekeeping employees, including Manuela Figueroa, were talking to a Local 1199 organizer outside of the facility. Basualto invited the group to continue their discussion at her home, which was located only two buildings away from the facility. The following day, on March 4, 2008, Figueroa's supervisor, Housekeeping Director Martin Reyes, approached her at work and asked her why she had gone to Basualto's home. When Figueroa asked Reyes why he was asking, Reyes did not respond. Later that day, Basualto complained about Reyes's questioning of Figueroa to Regency Grande administrators.

The Board reasonably determined that this questioning amounted to unlawful interference with union activity. Although Regency Grande now argues that Reyes's "innocuous" question did not violate the Act because he did not mention unionization during the conversation (Br. 41-42), we agree with the Board that Reyes's actions could have "suggest[ed] to the employees that the employer may take action against them because of their pro-Union sympathies," Hunter Douglas, Inc. v. N.L.R.B., 804 F.2d 808, 816 (3d Cir. 1986), and given them the impression that their union activities were under company surveillance.

Substantial evidence also supports the Board's determination that Regency Grande's actions on April 10, 2008 violated Section 8(a)(1). Housekeeping employee Maria Carraon testified that, immediately after she cast her ballot that morning, Reyes approached her and coworker Valeria Madeina as they left the polling area. Although Carraon was a well-known supporter of Local 1199, Madeina's union sympathies were unknown. After approaching the women, Reyes asked Medeina which union she had voted for. Madeina responded only that she had voted for "the better one." (A-186.) Reyes then asked whether 300S was "the better one," to which Madeina responded, "sure." (Id.) Although Reyes testified that he could not recall this conversation, and told the ALJ that any such conversation would have been in violation of company policy, the ALJ discredited his testimony as "vague and hedging." (A-447.) Given that "credibility decisions rest with the ALJ as long as he considers all relevant factors and sufficiently explains his resolutions," Hanlon, 738 F.2d at 613, we will defer to the ALJ's findings, as affirmed by the Board.

6

B.     The Section 8(a)(3) Violation

Next, Regency Grande challenges the agency's determination that the company violated Section 8(a)(3) of the Act when it discharged employee Basualto in retaliation for her support of Local 1199.[2]

Section 8(a)(3) prohibits an employer from discharging an employee because of her union membership or activities. N.L.R.B. v. Transp. Mgmt. Corp., 462 U.S. 393, 397-98 (1983), abrogated on other grounds by Director, Office of Workers' Compensation Programs, Dept. of Labor v. Greenwhich Collieries, 512 U.S. 267, 277 (1994). We have previously explained that "[t]he employer's motivation in firing the employee is essential to finding a violation, and the Board may look to both direct and circumstantial evidence to determine whether an unlawful motive exists." N.L.R.B. v. Omnitest Inspection Servs., Inc., 937 F.2d 112, 122 (3d Cir. 1991). To assess the employer's motivation, the Board may consider whether the employer knew about the employee's union activity, whether the employer was hostile towards the union, the timing of the employee's discharge, and the employer's reasons for discharging the employee. See, e.g., N.L.R.B. v. Eagle Material Handling, Inc., 558 F.2d 160, 169-70 (3d Cir. 1977). "When an employee is discharged for joining a union, the employer has violated the Act unless it can demonstrate that the employee would have been discharged regardless of his or her union membership." Omnitest Inspection Servs., 937 F.2d at 122.

Substantial evidence supports the Board's determination that Regency Grande

---

[2] Regency Grande's Section 8(a)(3) violation constitutes a derivative violation of Section 8(a)(1) as well. See Metropolitan Edison Co. v. N.L.R.B., 460 U.S. 693, 698 n.4 (1983).

7

terminated Basualto because of her support for Local 1199. Testimony at the hearing revealed that, when Basualto arrived to vote on election day, Regency Grande's owner, David Gross, asked her if she knew anything about an anti-Local 1199 flyer that had been posted in the dining room. Basualto said that she knew about the flyer but had not posted it. Gross then accused her of being the one who posted the flyer, stated that he did not want her at the facility, and fired her. As the Board explained, however, there was no reasonable basis for Gross to believe that Basualto had posted the flyer; to the contrary, the evidence indicated that: (a) Regency Grande's administration knew that Basualto had been supporting Local 1199 for many months; and (b) the facility's administrator, Joseph Olszewski, had specifically told Gross in the days leading up to the election that two other employees (Kathy Rohde and Michelle Meikle) had posted the flyer. Although Regency Grande urges this Court to credit Gross's testimony that he fired Basualto because he believed that she posted the anti-Local 1199 flyer, we decline to substitute our own credibility determinations for those of the agency. See Atl. Limousine v. N.L.R.B., 243 F.3d 711, 718-19 (3d Cir. 2001).

C.      The Board's Broad Remedial Order

Regency Grande next argues that the Board abused its discretion in issuing a broad cease-and-desist order. In devising a remedy, the ALJ explained that "[b]ecause [Regency Grande] has a proclivity for violating the Act, and because of the serious nature of the violations, I find it necessary to issue a broad Order requiring [Regency Grande] to cease and desist from infringing in any other manner on rights guaranteed employees by Section 7 of the Act." (A-452 (internal citations omitted).) The Board agreed, stating

8

that a remedial order was warranted because Regency Grande "has engaged in persistent attempts, by varying methods, to interfere with its employees' protected rights." (A-441, n.10.) Regency Grande now argues that its conduct at the Dover facility does not support the issuance of this type of broad order.

We disagree. A broad order is appropriate "when a respondent is shown to have a proclivity to violate the Act or has engaged in such egregious or widespread misconduct as to demonstrate a general disregard for the employees' fundamental statutory rights." Hickmott Foods, Inc., 242 N.L.R.B. 1357, 1357 (1979). As the Board noted, Regency Grande was found to have committed two unfair labor practices in Regency Grande I. Then, "[a]lmost immediately after the Third Circuit Court of Appeals enforced that Board Order, [Regency Grande] renewed its unlawful conduct in support of Local 300S and against Local 1199; only the means changed." (A-441, n.10.) As discussed above, Regency Grande proceeded to commit several additional unfair labor practices. We agree with the Board that, by this course of unlawful conduct, Regency Grande "has demonstrated both a general disregard for fundamental statutory rights, i.e., the right of employees to select their own representatives, and the likelihood of future and varying efforts to frustrate those rights." (Id.) This attitude of opposition to the purposes of the Act provides an appropriate basis for a broad remedial order. See Five Star Mfg., Inc., 348 N.L.R.B. 1301, 1302 (2006) (stating that a broad cease-and-desist order is warranted when "respondent's specific unlawful conduct manifests an attitude of opposition to the purposes of the Act to protect the rights of employees generally, providing an objective basis for enjoining a reasonably anticipated future threat to any of those Section 7

9

employee rights") (internal quotation marks and citation omitted).  Therefore, we will not disturb the Board's order.  See Quick v. N.L.R.B., 245 F.3d 231, 254 (3d Cir. 2001) ("The NLRB's choice of a remedy must be given special respect by reviewing courts, and must not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.") (internal quotation marks and citations omitted).

D.    The Motion to Recuse Member Becker

Finally, Regency Grande argues that the Board erred in denying its motion to recuse Member Becker.  Regency Grande claims that recusal was appropriate because, prior to his appointment on the Board, Member Becker served as counsel to the SEIU. In fact, according to Regency Grande, Member Becker was serving as general counsel to the SEIU when an arbitration involving SEIU Local 1199 and Local 300S took place in 2003.

We see no error in the Board's decision denying Regency's motion.  In Service Employees Local 121RN (Pomona Valley Hospital Medical Center), 355 NLRB No. 40 (2010), 2010 WL 2311381 (June 8, 2010), Member Becker explained the standards to apply in evaluating recusal requests.  He first noted that, pursuant to the Standards of Ethical Conduct for Employees of the Executive Branch set forth in Title 5 of the Code of Federal Regulations, decision-makers may not sit on cases involving parties they represented in the prior year.  2010 WL 2311381, at *8 (citing 5 C.F.R. § 2635.502(a), (b)(iv)).  In addition, based on the standards set forth in Executive Order 13490, "Ethics Commitments by Executive Branch Personnel," a member of the executive branch may

10

not, for a period of two years from the date of his appointment, "participate in any particular matter involving specific parties that directly and substantially related to [the member's] former employer or former clients, including regulations and contracts." Id. at *9 (citing Exec. Order No. 13490, 74 Fed. Reg. 4673 (Jan 21, 2009)).

Applying those principles here, the Board concluded that there was no basis for Member Becker's recusal. The Board also noted that Member Becker "played no role in and has no knowledge of" the 2003 proceeding, and that, although he did serve as counsel to the SEIU in the past, he never served as its "general counsel." (A-1.) Given that Regency has not shown that Member Becker's participation in this matter violated the above-described standards, or that there was any other reason for him to excuse himself from this case, we will not disturb the Board's decision.

IV.

We have reviewed Regency Grande's remaining arguments and conclude that they are without merit. Therefore, for the reasons set forth above, we will enforce the Board's August 23, 2010 order.[3]

---

[3] The Board's motion to strike portions of the joint appendix is denied as moot.

11