**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3547
_____

NATIONAL LABOR RELATIONS BOARD,

Petitioner

v.

REGENCY GRANDE NURSING AND
REHABILITATION CENTER

*1199 SEIU United Healthcare Workers East,

Intervenor

*(Pursuant to Clerk Order dated 10/4/10)
_____

On Appeal from the National Labor Relations Board
(NLRB-1 : 22-CA-26231-S)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 21, 2011

BEFORE: BARRY, AMBRO and COWEN , Circuit Judges

(Filed: August 10, 2011)
_____

OPINION
_____

COWEN, Circuit Judge.

This case is before the Court on an application of the National Labor Relations Board (the "Board") to enforce an order entered on August 23, 2010 against Regency Grande Nursing and Rehabilitation Center ("Regency Grande"). For the reasons that follow, we will enforce the order.

I.

In 2006, the Board found that Regency Grande had engaged in unfair labor practices in violation of Sections 8(a)(1), (2), and (3) of the National Labor Relations Act (the "Act") by recognizing Local 300S, a union affiliated with the United Food and Commercial Workers Union, as the exclusive collective-bargaining representative of its employees and entering into a collective-bargaining agreement containing union-security and dues-checkoff provisions with Local 300S at a time when that union did not represent a majority of Regency Grande employees. Regency Grande Nursing & Rehab. Ctr., 347 NLRB 1143 (2006). The Board ordered Regency Grande to withdraw its recognition of Local 300S and to reimburse employees for the money deducted from their paychecks pursuant to the unlawful collective bargaining agreement. Id. The Board noted, however, that those employees who voluntarily joined and became members of Local 300S prior to January 8, 2004, were not entitled to reimbursement. Id. Upon review, this Court found that substantial evidence supported the Board's findings and enforced the Board's order. N.L.R.B. v. Regency Grande Nursing & Rehab. Ctr., 265 F. App'x 74 (3d Cir. 2008) (not precedential).

The Regional Director of the NLRB then instituted compliance proceedings to determine the exact amount that Regency Grande owes to its employees. In its Compliance Specification, the Regional Director alleged that: (a) the reimbursement period began on January 8, 2004, the date that Regency Grande signed the unlawful collective bargaining agreement, and ended on March 31, 2008, when Regency Grande stopped deducting union dues and fees from its employees' paychecks; and (b) within this period, Regency Grande unlawfully deducted a total of $74,392.71 from the payrolls of 209 employees. (A49-57.) The Regional Director attached a worksheet to the Compliance Specification identifying the amounts owed to each of the 209 employees. (Id.) In response, Regency Grande acknowledged that 94 of its employees were entitled to reimbursement but claimed that 68 employees were not because they had signed membership cards for Local 300S before January 2004. (A70-71.)

At a hearing before an administrative law judge ("ALJ"), the parties stipulated that the employees identified in the Compliance Specification were employed by Regency Grande during the relevant period and that the gross pay figures contained in the worksheet were correctly calculated. Relying on these stipulations, the General Counsel declined to present any testimony at the hearing. For its part, Regency Grande called one witness, the former president of Local 300S, James Robinson, who testified that he had obtained signed membership cards from 68 Regency Grande employees prior to January 2004, but that he no longer had the cards because they had been destroyed. Regency Grande admitted that it did not have any other evidence identifying these alleged 68

3

employees, but argued that it was the General Counsel's burden, not its own, to demonstrate which employees were eligible for reimbursement; thus, according to Regency Grande, the General Counsel was required to show that the employees for whom it sought reimbursement did *not* sign membership cards prior to January 8, 2004. Regency Grande also argued at the hearing that changed circumstances had rendered the Board's remedy in this case unduly burdensome; specifically, Regency Grande claimed that the remedy would now fall unfairly on it because Local 300S, which was obligated to indemnify Regency Grande for such amounts, was experiencing financial difficulties and would no longer be able to meet its obligation to Regency Grande.

The ALJ rejected both arguments, and Regency Grande sought administrative review. While its appeal was pending before the Board, Regency Grande filed a motion requesting that Board Member Becker recuse himself from the case because of his past involvement with the Service Employees International Union ("SEIU"), a local of which initiated the underlying unfair labor practice action.

Upon review, the Board affirmed the ALJ's conclusions and adopted the recommended order with minor corrections to the ALJ's calculations. The Board ordered Regency Grande to pay each affected employee a specified amount of money totaling $74,852.71 plus interest. The Board denied Regency Grande's motion to recuse Member Becker. We now review the Board's order.[1]

---

[1] On October 23, 2009, a two-member panel of the Board issued a Supplemental Decision and Order adopting and affirming the ALJ's decision. Thereafter, Regency Grande filed a petition for review in the United States Court of Appeals for the District of Columbia

4

II.

We exercise jurisdiction over this appeal from the Board's decision pursuant to Section 10(e) of the NLRA. 29 U.S.C. § 160(e). Where the Board has adopted the ALJ's decision in part, we review both the decisions of the ALJ and the Board. See id. We review these decisions to determine whether there is substantial evidence in the record as a whole supporting the agency's findings. Stardyne, Inc. v. N.L.R.B., 41 F.3d 141, 151 (3d Cir. 1994).

III.

A.    The Burden of Proof

Regency Grande first challenges the ALJ's determination regarding the parties' burdens of proof in the compliance proceedings. At the hearing before the ALJ, the General Counsel and Regency Grande stipulated that the employees named in the Compliance Specification were, in fact, employed by Regency Grande during the relevant period, and that the method by which the reimbursement amounts were calculated was accurate. The General Counsel and Regency Grande disagreed, however, as to which party bore the burden of proof on the issue of whether any of those employees had voluntarily joined Local 300S prior to January 8, 2004 and were thus ineligible for

Circuit. On June 17, 2010, the United States Supreme Court issued its decision in New Process Steel, L.P. v. N.L.R.B., 130 S. Ct. 2635 (2010), holding that, under Section 3(b) of the Act, a delegee group of at least three members must be maintained. Thereafter, the Board issued an order setting aside the October 23, 2009 decision and order. The Board subsequently delegated its authority in this proceeding to a three-member panel, which issued a Supplemental Decision and Order on August 23, 2010 incorporating by reference the two-member panel's decision and adopting and affirming the ALJ's decision.

5

reimbursement. The ALJ concluded that the burden was on Regency Grande to establish

facts that would mitigate its liability:

> As a general matter, the General Counsel ultimately bears the burden of proof in a compliance case. Here, I find that the stipulations entered into by the parties[,] as described above, are sufficient for the General Counsel to meet its initial burden of establishing that the amounts sought for employees are accurate. Thus, the record establishes that the employees named in the compliance specification were employed by [Regency Grande] during the relevant period for purposes of computing their reimbursement, and that the figures set forth are accurate calculations of moneys which would be due to employees pursuant to the Board's Order which provides that [Regency Grande] be directed to:
>
>> Reimburse, with interest, all of its former and present unit employees for fees and moneys deducted from their back pay pursuant to the union-security and dues-checkoff clauses of the contract dated January 8, 2004. However, reimbursement does not extend to those employees who voluntarily joined and became members of Local 300S prior to January 8, 2004.
>
> This language echoes that which is contained in numerous cases where the Board has held that reimbursement is not available to those employees who "voluntarily" joined a union prior to the effective date of an unlawful contract. In my view, such language contemplates that the proof to be adduced at any subsequent compliance proceeding would be in the form of mitigation of [Regency Grande's] liability. There is no clear suggestion in such cases that the General Counsel would be obliged to prove the negative, i.e., that individual employees had *not* voluntarily joined the unlawfully recognized union, to render them eligible for a reimbursement remedy.

(A-7 to A-8 (citations omitted).)

Regency Grande now argues that, contrary to the ALJ's conclusion, "[i]t was

incumbent on the [General Counsel] to establish eligibility for dues reimbursement by

showing that employees that he seeks reimbursement for, at the least, did not sign

6

membership cards before January 2004." (Br. 7-8.) We disagree. We see no error in the ALJ's reasoning that, once the General Counsel had identified the individuals who were employed during the relevant period and the amounts deducted from their paychecks, it was Regency Grande's burden to show that certain employees, if any, within that group were not entitled to reimbursement because they had voluntarily joined the union.

B.    Whether the Board's Reimbursement Order is Unduly Burdensome

Regency Grande next argues that the ALJ erred in rejecting its argument that changed circumstances have rendered the Board's remedy in the underlying case unduly burdensome. At the hearing, former Local 300S president Robinson testified that the collective bargaining agreement contained a clause requiring Local 300S to indemnify Regency Grande for any claims related to the deduction of dues and fees from employees' paychecks. According to Robinson, however, Local 300S was now facing financial difficulties, and any attempt by Regency Grande to obtain indemnification would "bankrupt the union." (A-39.) Thus, Regency Grande argued, it can no longer obtain indemnification from Local 300S.

We agree with the ALJ that Regency Grande's purported right of indemnification from Local 300S is irrelevant to this case because the Board has already issued an order, which this Court has enforced, holding Regency Grande liable for the reimbursement of the employees involved herein. Therefore, the ALJ properly rejected Regency Grande's undue burden claim.

C.    The Motion to Recuse Member Becker

7

Finally, Regency Grande argues that the Board erred in denying its motion to recuse Member Becker. Regency Grande claims that recusal was appropriate because, prior to his appointment on the Board, Member Becker served as counsel to the SEIU, a local of which initiated the underlying unfair labor practices action. In fact, according to Regency Grande, Member Becker was serving as general counsel to the SEIU when an arbitration involving SEIU Local 1199 and Local 300S took place in 2003.

We see no error in the Board's decision denying Regency Grande's motion. In Service Employees Local 121RN (Pomona Valley Hospital Medical Center), 355 NLRB No. 40 (2010), 2010 WL 2311381 (June 8, 2010), Member Becker explained the standards to apply in evaluating recusal requests. He first noted that, pursuant to the Standards of Ethical Conduct for Employees of the Executive Branch set forth in Title 5 of the Code of Federal Regulations, decision-makers may not sit on cases involving parties they represented in the prior year. 2010 WL 2311381, at *8 (citing 5 C.F.R. § 2635.502(a), (b)(iv)). In addition, based on the standards set forth in Executive Order 13490, "Ethics Commitments by Executive Branch Personnel," a member of the executive branch may not, for a period of two years from the date of his appointment, "participate in any particular matter involving specific parties that directly and substantially related to [the member's] former employer or former clients, including regulations and contracts." Id. at *9 (citing Exec. Order No. 13490, 74 Fed. Reg. 4673 (Jan 21, 2009)).

Applying those principles here, the Board concluded that there was no basis for Member Becker's recusal.  The Board also noted that Member Becker "played no role in and has no knowledge of" the 2003 proceeding, and that, although he did serve as counsel to the SEIU in the past, he never served as its "general counsel."  (A-1.)  Given that Regency Grande has not shown that Member Becker's participation in this matter violated the above-described standards, or that there was any other reason for him to excuse himself from this case, we will not disturb the Board's decision.

IV.

We have reviewed Regency Grande's remaining arguments and conclude that they are without merit.  Therefore, for the reasons set forth above, we will enforce the Board's August 23, 2010 order.[2]

---

[2] The "Unopposed Motion of the National Labor Relations Board to Strike Respondent's Brief and Joint Appendix" is denied as moot.